## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 2 1 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | | |
|---|---|---|
| AMPAZZIO W. WARREN, | ) | |
| Petitioner, | ) | **Case No. 7:04CV00607** |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JERRY KILGORE, | ) | **By: Hon. Glen E. Conrad** |
| Respondent. | ) | **United States District Judge** |

Ampazzio W. Warren, a Virginia inmate proceeding pro se, filed this action as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Warren challenges the validity of his convictions for possession of cocaine with intent to distribute, possession of a firearm while in possession of drugs, and carrying a concealed weapon, second offense. By order entered February 2, 2005, the case was referred to United States Magistrate Judge Michael F. Urbanski for appropriate proceedings pursuant to 28 U.S.C. § 636(b)(1)(B). This matter is presently before the court for review of the magistrate judge's Report and Recommendation, in which he recommends granting the motion to dismiss filed by the respondent. Warren has filed objections to the magistrate judge's report. For the reasons set forth below, the magistrate judge's Report and Recommendation is adopted in its entirety. The court will grant the respondent's motion to dismiss.

### BACKGROUND

On May 1, 2000, Warren was indicted on charges of possession of cocaine with intent to distribute, possession of a firearm while in possession of drugs, and carrying a concealed weapon, second offense. Warren was tried before a jury in the Circuit Court for the City of Danville on June 5, 2000. He was found guilty of all three charges, and sentenced to twenty-five years in prison. The following facts are taken from the trial transcript.

On the evening of December 11, 1999, an individual called the Danville Police Department and reported that two black men were fighting in the middle of the street on Bell Drive. (Tr. at 65). Officer Samuel Bray responded to the call. (Tr. at 65). Upon arriving on the scene, Officer Bray observed two black men in the middle of the street.[1] (Tr. at 66). Officer Bray testified that Warren was one of those men. (Tr. at 66).

When Officer Bray began to exit his patrol car, the two men ran into a nearby yard and entered a house. (Tr. at 66, 67). Officer Bray ran over to the house and up the front steps. (Tr. at 67). The owner of the house, Sallie Long, opened the front door and asked Officer Bray to remove the men from her house.[2] (Tr. at 68).

After Officer Bray entered the house, Warren ran into the kitchen. (Tr. at 68). Officer Bray followed him, and noticed that Warren's right fist was clinched. (Tr. at 69). When the officer asked Warren what he was doing, Warren dropped a clear, plastic bag on the floor and attempted to conceal it with his foot. (Tr. at 70). After Warren refused to move his foot, Officer Bray moved it and retrieved a bag containing crack cocaine. (Tr. at 71).

Warren was eventually handcuffed and placed face-down on the backseat of Officer Bray's patrol car. (Tr. at 76, 79). Moments later, when Officer Bray returned to the car, Warren was sitting in an upright position. (Tr. at 81). The officer found a 44-caliber revolver between Warren's feet and the backseat. (Tr. at 82).

---

[1] In his report, the magistrate judge states that Officer Bray identified individuals fitting the caller's description. Warren has objected to this statement, on the basis that the caller provided only a vague description of the two men. Warren's objection is overruled. The caller reported that two black men were fighting in the middle of the street, and Officer Bray observed two black men in the middle of the street when he arrived on the scene. (Tr. at 65, 66).

[2] According to Officer Bray, Sallie Long told him to "get these guys outta' my house." (Tr. at 68). During the suppression hearing before trial, Sallie Long testified that she knew Warren, and that she told Officer Bray to "get [the other man] outta' the house." (Tr. at 28).

2

Warren appealed his convictions to the Court of Appeals of Virginia. In his petition for appeal, Warren raised six claims of trial court error. On April 2, 2002, Warren's convictions were affirmed. Warren subsequently filed a petition for appeal with the Supreme Court of Virginia. The petition was refused on September 11, 2002.

On September 8, 2003, Warren filed a petition for a writ of habeas corpus in the Circuit Court for the City of Danville. The petition was dismissed on November 13, 2003. Warren appealed the dismissal of the petition to the Supreme Court of Virginia. The petition for appeal was refused on July 29, 2004.

Warren has now filed this petition, in which he asserts nine claims of ineffective assistance of counsel and six claims of trial court error.[3] On November 11, 2004, the respondent moved to dismiss the petition. The magistrate judge has issued a Report and Recommendation in which he recommends granting the respondent's motion. The parties were advised that they were entitled to file written objections to the report within ten days. The parties were further advised that failure to file specific objections would be deemed to constitute a waiver of the right to contest the magistrate judge's findings and conclusions. After receiving two extensions of time in which to file objections, Warren filed objections to certain portions of the magistrate judge's report on September 6, 2005. Specifically, Warren has objected to the magistrate judge's recommendations regarding his ineffective assistance of counsel claims.

## STANDARD OF REVIEW

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The magistrate judge's report has no presumptive weight, and this

---

[3] Warren's ineffective assistance of counsel claims were raised in his state habeas petition. Warren's claims regarding alleged trial court errors were raised on direct appeal.

3

court retains the responsibility to make a final determination. Id. at 270-271. The court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). As a result, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

## DISCUSSION

A.     Petitioner's Ineffective Assistance Claims

Warren first attacks his conviction based on nine claims of ineffective assistance of counsel (claims A through I). A criminal defendant's right to effective assistance of counsel is protected by the Sixth Amendment to the United States Constitution. In Strickland v. Washington, 466 U.S. 668, 669 (1984), the United States Supreme Court set forth a two-prong test for evaluating ineffective assistance claims. The defendant must show that his counsel's performance fell "below an objective standard of reasonableness," and that the "deficient performance" must have "prejudiced the defense." Id. at 687-688.

Warren's ineffective assistance claims were adjudicated on the merits as part of the state habeas proceedings. Therefore, pursuant to the Antiterrorism and Effective Death Penalty Act, this court may grant habeas relief only if the state court's adjudication of the claims "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). The United States Supreme Court has explained that this statute "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000) (internal citations omitted). Consequently, "state-court judgments must be

4

upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Id. at 389.

1.    Claim A

Warren first argues that his trial counsel was ineffective for failing to subpoena the tape of the 911 call reporting the disturbance on Bell Drive. Warren contends that the information provided by the caller was insufficient to support Officer Bray's decision to follow him inside Sallie Long's house. The state habeas court concluded that Warren's allegations were insufficient to establish a claim under Strickland. The state habeas court determined that the 911 tape was irrelevant, because Long consented to the officer's entry.

The court agrees with the magistrate judge that the state habeas court's decision is not based on an unreasonable application of federal law or an unreasonable determination of the facts. Although a warrantless entry is generally prohibited by the Fourth Amendment to the United States Constitution, this prohibition "does not apply ... to situations in which voluntary consent has been obtained...." Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). In his objections to the magistrate judge's report, Warren argues that Officer Bray did not have permission to enter the house. However, the court disagrees. Officer Bray testified at trial, as well as at the suppression hearing before trial, that when he approached the house, Sallie Long opened the door and asked him to "get these guys outta' my house." (Tr. at 18, 68). Long testified that a man she did not know "jerked" her door open and ran through her house. (Tr. at 27-28). Long further testified that she told Officer Bray to "get him outta' the house."[4] (Tr. at 28). Based on Long's request, Officer Bray's warrantless entry was not unlawful. Therefore, Warren's trial counsel did

---

[4] Although Long testified that she did not specifically tell the officer to enter her house, Long testified on more than one occasion that she told the officer to "get him outta' the house." (Tr. at 28, 29).

5

not act unreasonably in failing to subpoena the 911 tape. Accordingly, Warren's first claim must be dismissed.

### 2. Claim B

In his second claim, Warren alleges that his trial counsel was ineffective for failing to request a suppression hearing at least three days before trial, as required by Va. Code § 19.2-266.2. Warren contends that if a suppression hearing had been held prior to the trial date, his trial counsel would have known that one of his witnesses, Jami Long, was unavailable to testify at trial. Warren speculates that he would have received a continuance as a result of Long's absence.

The state habeas court concluded that Warren failed to meet either prong of the Strickland test. First, Warren did not show any inconsistency between the suppression hearing and trial strategies. Additionally, Warren failed to demonstrate that Jami Long's absence was prejudicial. The state habeas court determined that Jami Long's affidavit, which was attached to Warren's state habeas petition, established that Sallie Long gave Officer Bray permission to enter her house.

The court agrees with the magistrate judge that the state habeas court did not unreasonably apply the law or the facts with respect to this claim. Although Warren again emphasizes that his trial counsel did not comply with § 19.2-266.2, Warren has failed to show any prejudice from the delayed suppression hearing. Warren also has failed to show that he was prejudiced by Jami Long's absence at trial. Although Warren asserts that Jami Long would have testified that her mother did not give Officer Bray permission to enter the house, Warren's assertion is refuted by Jami Long's own affidavit. In this affidavit, Jami Long states that she "heard her mother tell the police to get him out of my house...." (Warren Exhibit B at ¶ 10).

6

Accordingly, the court agrees with the magistrate judge that Warren's second claim must be dismissed.

3.    Claim C

In his third claim, Warren argues that his trial counsel was ineffective for failing to ask one of the defense's witnesses, Kelly Reid, whether she saw Warren drop anything on the kitchen floor. Warren argues that his trial counsel should have impeached Sallie Long with a note that she wrote on March 8, 2000, in which she stated that she could not remember the events that occurred on December 11, 1999. Warren also argues that his trial counsel should have proffered Jami Long's testimony in support of his request for a continuance.

The state habeas court found that Warren's arguments failed factually. The court noted that Warren's trial counsel twice asked Reid whether she saw anything on the floor when the police arrested Warren. The state habeas court also noted that Warren's trial counsel offered to state the materiality of Jami Long's proposed testimony in support of his request for a continuance. The state habeas court went on to conclude that Warren was not prejudiced by Jami Long's absence.

The court agrees with the magistrate judge that Warren's third claim is without merit. The transcript of the suppression hearing indicates that Warren's trial counsel twice asked Reid whether she saw anything on the kitchen floor. (Tr. at 36). Likewise, Warren's trial counsel asked Sallie Long about her statement on March 8, 2000. (Tr. at 29). Warren's trial counsel also offered to proffer Jami Long's proposed testimony in support of a continuance. (Tr. at 11). Accordingly, Warren has failed to show that his trial counsel's performance fell below an objective standard of reasonableness. Therefore, his third claim must be dismissed.

7

4.    Claim D

In his fourth ineffective assistance claim, Warren argues that his trial counsel failed to subpoena Jami Long sufficiently in advance of trial. The state habeas court concluded that there was no Strickland violation because Warren was not prejudiced by Long's absence.

The court agrees with the magistrate judge that the state habeas court's decision is not contrary to clearly established federal law. The petitioner has not shown how he was prejudiced by Jami Long's absence. As previously explained, Jami Long's affidavit merely confirms that Sallie Long wanted Officer Bray to remove an individual from her house. For these reasons, Warren's fourth claim must be dismissed.

5.    Claim E

In his fifth claim, Warren alleges that his trial counsel was ineffective for failing to object to Detective Merricks's testimony that the presence of the particular quantity of crack cocaine seized from Warren, along with the presence of a pager and a firearm, was consistent with distribution rather than personal use. The state habeas court concluded that the petitioner's claim failed under both prongs of the Strickland test because the testimony was admissible under Askew v. Commonwealth, 578 S.E.2d 58, 61 (2003). In Askew, the Supreme Court of Virginia held that "the Commonwealth may introduce opinion testimony from law enforcement officers familiar with the habits and propensities of local drug users as to what amounts are inconsistent with personal use." Id.

In determining that this claim should be dismissed, the magistrate judge reasoned that a state court's decision based solely on state law is binding on this court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Warren does not challenge the magistrate judge's reasoning. Instead, Warren argues that the admission of the police officer's testimony violated his Fourteenth

8

Amendment right to due process, because it had a substantial influence on the jury's verdict. However, the court is unable to conclude that the admission of the officer's testimony rose to the level of a constitutional violation. See United States v. Solorio-Tafolla, 324 F.3d 964, 965 (8th Cir. 2003) (allowing expert testimony on drug quantities obtained for personal use); United States v. Valle, 72 F.3d 210, 214-15 (1st Cir. 1995) (allowing expert testimony that the amount of drugs seized suggested distribution); United States v. Gastiaburo, 16 F.3d 582, 587-88 (4th Cir. 1994) (holding that the admission of expert testimony that twenty-one "hits" of crack cocaine were "certainly possessed with the intent to distribute" was not plain error). Accordingly, the court agrees with the magistrate judge that Warren's trial counsel did not act unreasonably in failing to object to the officer's testimony. For these reasons, the petitioner's fifth claim must be dismissed.

6    Claim F

In his sixth claim, Warren contends that his trial counsel was ineffective for failing to preserve a claim of error under Fishback v. Commonwealth, 532 S.E.2d 629 (2000). During Warren's trial on June 5, 2000, the jury asked the trial court a question regarding the percentage of the sentence that Warren would have to serve. In response, the trial court advised the members of the jury that they should not concern themselves with what would happen to Warren after sentencing. Four days after Warren's trial, the Supreme Court of Virginia issued the Fishback decision. The Court held that juries must be instructed on the abolition of parole for non-capital cases committed on or after January 1, 1995. Id. at 634.

The state habeas court concluded that Warren failed to satisfy either prong of the Strickland test, since Fishback was not the established law at the time of Warren's trial. Instead, the established law required courts not to inform juries of post-sentencing considerations that

9

could affect the length of a criminal defendant's sentence.  Coward v. Commonwealth, 178 S.E. 797, 799 (1935).

The court agrees with the magistrate judge that the state habeas court's decision is not contrary to clearly established federal law, and that Warren has not established that his trial counsel's performance fell below an objective standard of reasonableness.  As the United States Supreme Court explained in Smith v. Murray, 477 U.S. 527, 535 (1986), "[i]t will often be the case that even the most informed counsel will fail to anticipate a state appellate court's willingness to reconsider a prior holding."  Accordingly, Warren's sixth claim must be dismissed.

7.    Claim G

In his seventh claim, Warren argues that his trial counsel was ineffective for failing to voir dire three jurors regarding possible misconduct.  Warren contends that his girlfriend overheard three female jurors discussing the case during lunch, despite being advised by the trial court that they should not discuss the case with anyone.  Upon being advised of the alleged misconduct, the trial court conducted a voir dire examination of the three jurors.  Each of the jurors denied discussing the case.  The petitioner contends that the jurors would have admitted that they discussed the case, if his trial counsel had questioned them himself.

The state habeas court concluded that Warren's speculation was insufficient to establish either prong of the Strickland test.  The court agrees with the magistrate judge that the state habeas court's decision is not contrary to clearly established federal law.  See Daniel v. West Virginia, 964 F. Supp. 1050, 1058 (S. D. W. Va. 1997) (noting that speculation "is too thin a reed to support the extreme remedy of habeas corpus relief.").  Therefore, Warren's seventh claim must be dismissed.

10

8.    Claim H

In his eighth claim, Warren alleges that his trial counsel was ineffective for failing to have fingerprint tests performed on the plastic bag containing crack cocaine, as well as on the handgun discovered in Warren's possession.  The state habeas court concluded that Warren's speculation that such testing would yield favorable results was insufficient to establish a claim under Strickland.

The court agrees with the magistrate judge that the state habeas court's decision is not contrary to clearly established law.  Warren's mere speculation that fingerprint testing would have shown that he never possessed the plastic bag or the handgun is insufficient to establish that his trial counsel was ineffective for not requesting such testing.  Accordingly, Warren's eighth claim must be dismissed.

9.    Claim I

In his ninth claim, Warren alleges that his trial counsel was ineffective for failing to raise an objection under Batson v. Kentucky, 476 U.S. 79 (1986).  Warren contends that he was denied the right to challenge the Commonwealth's use of peremptory strikes to excuse two or three black members of the jury.  The state habeas court concluded that there was nothing in the record to support Warren's claim.

The court agrees with the magistrate judge that the state habeas court's decision is not contrary to clearly established federal law.  In Batson, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Id. at 89.  In order to establish a prima facie case of discrimination under Batson, a defendant must satisfy the following three elements:

11

(1) that the defendant is a member of a distinct racial group; (2) that the prosecutor used the challenges to remove from the venire members of the defendant's race; and (3) that other facts and circumstances surrounding the proceeding raise an inference that the prosecutor discriminated in his or her selection of the jury pool. Id. at 96; Keel v. French, 162 F.3d 263, 271 (4th Cir. 1998). Once a prima facie case is established, the burden shifts to the prosecution to advance a non-discriminatory reason for the peremptory strikes. Batson at 97. The court must then determine whether the defendant has proven intentional discrimination. Id.

In this case, Warren has not established a prima facie case of discrimination. Specifically, Warren has not pointed to any facts or circumstances surrounding the jury selection process that would raise an inference that the prosecution's decision to strike two or three black individuals from the jury pool was motivated by race.[5] Accordingly, Warren's trial counsel did not act unreasonably in failing to raise a Batson objection. See Keel, 162 F.3d at 270-272.

B.    Petitioner's Remaining Claims

The magistrate judge has also recommended granting the respondent's motion to dismiss with respect to Warren's remaining claims regarding various errors by the trial court. Warren has not filed any specific objections to those portions of the magistrate judge's report. Therefore, the court will adopt the Report and Recommendation of the magistrate judge and grant the respondent's motion dismiss as to Warren's remaining claims. See Wells v. Shriners Hospital,

---

[5] In his objections to the magistrate judge's report and recommendation, Warren argues that the court should not dismiss the Batson claim until he has the opportunity to review a transcript of the jury selection process. The court will construe Warren's argument as a motion for extension of time to respond to the magistrate judge's report and recommendation. Warren's motion must be denied. After the magistrate judge issued his report and recommendation, Warren requested and received two extensions of time in which to respond to the magistrate judge's report. Warren's third request for an extension of time was denied. At no time prior to the submission of his objections did Warren request the opportunity to obtain a transcript of the jury selection process.

12

109 F.3d 198, 199 (4th Cir. 1997) (failure to file written objections to the Report and Recommendation constitutes a waiver of the right to further contest those issues).

## CONCLUSION

For the reasons stated, the court will adopt the magistrate judge's Report and Recommendation in its entirety. The respondent's motion to dismiss shall be granted. The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner and counsel of record for the respondent.

ENTER: This ___21st___ day of September, 2005.

_____
United States District Judge

13